WENNEBY, Respondent, vs. TIME INSURANCE COMPANY, Appellant.

*January 16—February 12, 1924.*

*Principal and agent: Duty of agent: Good faith and loyalty: Securing lease on premises used by principal in agent's name.*

1. In view of the obligation which public policy places upon an agent to maintain good faith towards and loyalty in the service of the principal, an agent of an insurance company who, prior to the expiration of the company's lease on offices

occupied by the agent, negotiated with the landlord and secured a lease in her own name with the intention of using the offices as district manager of another insurance company, forfeited all rights under her contract of agency with the company.  p. 657.

2. The insurance company had a right to possession of the offices during the term of its lease, and was not required to resort to unlawful detainer proceedings to obtain possession, and was entitled to enter the offices in the absence of the agent and remove files connected with the agency, without being guilty of tortious eviction or wrongful destruction of the agent's business.  p. 658.

APPEAL from a judgment of the superior court of Douglas county: W. E. HAILY, Judge. *Reversed.*

The complaint alleged that about January 1, 1920, with the consent of the defendant, engaged in accident and health insurance, plaintiff purchased from the then agent of defendant its agency for six of the northwest counties in Wisconsin with headquarters at Superior.  That on January 2d a written contract was made between the parties; that she continued such business and by her efforts added greatly to the value thereof, so that on March 31, 1920, the agency was worth $4,000.  That she had performed the provisions, conditions, and agreements on her part to be performed under such contract.  That on said March 31st the defendant, without right, authority, or notice, took possession of the office, business, books, papers, etc., the furniture, furnishings, and equipment, and wholly excluded plaintiff therefrom, placing its own representative therein, and has since that time wholly excluded plaintiff from the agency and business.  That since March 31st defendant has retained possession of said agency and business and has received and retained the earnings and profits of said business, amounting, as plaintiff was informed and believed, to the sum of $2,000 and upwards.  That her damages were $6,250, for which sum she prayed judgment.

The answer set out as a defense, in substance, the obligations of the plaintiff to defendant to faithfully and loyally

perform her duties as agent under said contract. That prior to March 28, 1921, she breached said contract by not devoting her entire time to the interests of the defendant, or by not giving her best endeavors to procure policy-holders for defendant; and that during the month of March, without the knowledge or consent of the defendant, she negotiated with the owner of the building in which said office was located for a lease to herself in her own name and did procure a lease for the purpose of excluding the defendant, after termination of its then lease on April 30, 1921, and turned the same over to a competitor of defendant, the Supreme Casualty Company, with which she allied herself and aided and assisted in its organization. That she solicited certain of the solicitors and collectors working under her for defendant to transfer their services and business to said competitor.

That upon knowledge of such facts of disloyalty and malfeasance coming to defendant, written notice was served on the plaintiff canceling said contract.

The material parts of the agreement of January 2, 1920, between the parties are in substance as follows:

Plaintiff was employed as district representative of said counties for the purpose of procuring and effecting applications for insurance in the said company and collecting premiums to be paid with such application or on collection reports. Provision was made as to compensation in the shape of commission on the business done, but not here material. It further provided:

"The said *S. D. Wenneby* shall use her best endeavors to procure policy-holders for the said company and the services of acceptable solicitors and collectors, but no appointment of such agents or collectors shall be binding upon the said company until approved in writing by an officer of the said company.

"It is further understood that the said *S. D. Wenneby* shall devote her entire time to the interests of the *Time Insurance Company* while this contract is in force. Nor shall

any act or promise be binding upon the said company until approved in writing by an officer of the said company and then only as such acts and promises comply with the written or printed instructions of the company.

"The authority of the said *S. D. Wenneby* shall extend no further than as above stated. She shall not make, alter, or discharge any contracts, or waive any forfeitures, and shall receive no other remuneration for any services other than herein provided, except as may be agreed on by an officer of the company.

"It is expressly understood and agreed by the said *S. D. Wenneby* that all money received or collected for or in behalf of the said company shall constitute a fiduciary trust and shall not be used by her for any personal or other purpose whatever, and shall be paid over to said company.

"This agreement is made with the expectation that it shall continue indefinitely, but it can be terminated by either party herein by giving thirty (30) days' notice in writing to the other party. If terminated by the said *S. D. Wenneby* or by the company for malfeasance in her agency or by failure to comply with this contract, the said *S. D. Wenneby* shall forfeit all credits and emoluments hereunder immediately to the said company, but if terminated by the company, except for reasons above stated, the said *S. D. Wenneby* shall receive the commissions and profits hereunder as stated for six (6) months from date of such cancellation on policies dated previous to such cancellation.

"If at any time the said *S. D. Wenneby* (provided there are no charges against her for breach of this contract or malfeasance in her agency) wishes to retire from the health and accident business and secures the services of an acceptable successor to take over her agency, the company will agree to the transfer of such agency, and any money received by the said *S. D. Wenneby* from her successor for her good will in the transfer of such agency may be retained by the said *S. D. Wenneby*."

The facts in this record, so far as material in disposing of it, present the following situation:

In 1916 plaintiff was engaged for office work and soliciting insurance with defendant's then representative at Superior. In April, 1918, she left, but in a few weeks was

employed in defendant's home office at Milwaukee and in traveling for them until October, 1919. She then purchased from its Racine representative the agency there. January 1, 1920, she exchanged agencies with the representative at Superior and went into Room 111 in the United States National Bank building where such agency had been conducted for a number of years. January 2d she made the contract above set forth, executed on defendant's behalf by one J. J. Tague, in charge of the agencies. Room 111 had been under verbal lease only, and in the spring of 1920 a written lease was prepared at an increased rental and in which plaintiff's name was inserted as lessee. May 5th plaintiff sent this to Mr. Tague, for defendant, by letter in which she stated: "If you wish me to sign this, kindly give me written authority to do so." This lease was returned with plaintiff's name stricken out and defendant's inserted, with a letter from defendant's secretary of May 7th mentioning the insertion of defendant's name as lessee, and also advising plaintiff to pay the rent monthly, also light and telephone bills, and to deduct such payments from her collection returns. From January to May, 1920, the rent had been paid directly from the Milwaukee office; thereafter rent and the other bills were paid as so directed.

The following year, in February, 1921, Mr. Tague terminated his relationship of many years' standing with defendant and became actively interested in the organization of a competitive company, Supreme Casualty Company, also of Milwaukee.

February 18th plaintiff advertised at Superior her desire to sell her agency. This was without notice to defendant. There is testimony to the effect that she arranged to sell the agency for $4,000 to her sister, who was familiar with the business, and the latter's husband. Nothing was paid on such contract nor any writings prepared.

About February 26th the agent of the building, called in by plaintiff, she, and Mr. Tague, had a talk about a future

lease of this Room 111 to commence at the expiration of
plaintiff's lease, May 1, 1921. About March 18th plaintiff
received a letter addressed to her personally from the agent
of the building and saying:

"Regarding our conversation some time ago, in which Mr.
J. J. Tague was also instrumental, we find that we can give
you a lease for another year, but for the next week we
cannot say just what rental will be charged as we have not
figured it out," etc.

"This lease is to be guaranteed by Mr. Tague and his
company, the Supreme Casualty Company of Milwaukee,
Wisconsin.

"This letter, I believe, will take care of you for the time
being until we can get together with a definite lease."

No notice of these matters was given to defendant by
plaintiff. Her reason for so omitting to report she stated
to be because the proposed purchasers of the agency had
expressed to her their desire not to continue the agency in
Room 111. No steps, however, were ever taken to have
defendant approve of such proposed agency transfer as re-
quired under the contract and in the manner plaintiff her-
self had obtained her agency.

Plaintiff signed a lease for Room 111 for the year follow-
ing defendant's lease and at an advanced rental, and by a
circular letter of April 25th advised her friends that she
was no longer connected with defendant but had accepted
the position of district manager for the Supreme Casualty
Company, and "after May 1st will occupy the same old
stand at Room 111. . . ."

On March 31st two representatives of defendant with
a police officer called at Room 111. Plaintiff was absent
and the office in charge of her aforesaid sister. The pur-
pose of the call was stated, and a written notice claiming
to cancel and terminate the contract between the parties on
the ground of her malfeasance was presented or read to the
sister, who communicated by telephone with the plaintiff.
Possession of the office was insisted upon by defendant's

representative, and then some sort of an agreement was made whereby the inner one of the rooms of said office was to be locked and certain articles of plaintiff's personal property as well as defendant's to be stored there until further proceedings. During the night, however, in violation of such agreement, one of defendant's representatives entered said room and removed therefrom certain of the records and files connected with defendant's agency.

April 1st plaintiff returned to the office, and at this time the notice terminating the agency was served upon her. Defendant retained possession of Room 111 until May 1st.

At the close of the testimony defendant moved for a directed verdict upon several grounds. This was denied and a special verdict submitted and answered as follows:

"(1) Did *S. D. Wenneby* devote her time reasonably to the interests of the insurance company between January 2, 1920, and March 31, 1921, as required by her written contract with the company? *A.* Yes.

"(2) Did the plaintiff, *S. D. Wenneby,* fail to exercise good faith and diligence in the interests of the *Time Insurance Company* prior to March 31, 1921? *A.* No.

"(3) Damages? *A.* $3,500."

Subsequently motions were made by the respective parties and were continued by stipulation and order from time to time. Upon the death of the Honorable Solon L. Perrin, who had presided at the trial, they were subsequently continued by stipulation and finally heard and disposed of by Judge W. E. Haily, his successor. Judge Haily reviewed by written opinion the several matters presented by these motions and stated that in his judgment, and contrary to the verdict, there was a breach of plaintiff's fidelity in regard to the new lease, yet that the obtaining possession by defendant on March 31st was a tortious eviction and wrongful destruction of plaintiff's business, so that the service of the notice on April 1st was of no force and that plaintiff became entitled, under the provisions of the

contract, to $754.75, the amount conceded to be the computation under the six-months clause, if applicable.

A new trial was granted unless plaintiff should consent to take such sum in lieu of the amount in the verdict. Upon such filed consent judgment was so ordered, and from such defendant has appealed.

For the appellant there was a brief by *Hanitch, Hartley, McPherson & Johnson* of Superior, attorneys, and *Julius E. Roehr,* of Milwaukee, of counsel, and oral argument by *Mr. Roehr* and *Mr. C. J. Hartley.*

For the respondent there was a brief by *Grace, Fridley & Crawford* of Superior, and oral argument by *C. R. Fridley.*

ESCHWEILER, J. Upon the evidence outlined above, and which we have confined to the transactions as to the new lease only, defendant was entitled to judgment.

There was here a plain and direct violation of the obligation to maintain good faith towards, and loyalty in the service of, the principal which public policy places upon the agent. It need not be expressed in the writing between them; it is woven into the relationship.

This office had been used for defendant's business prior to plaintiff's obtaining the agency; it was for them and not her to say whether it should be continued. That it was of value is too apparent to dilate upon, and plaintiff's own actions demonstrate it. Her concealment from her principal of what was being done by and on behalf of the new and rival company as to this office of which defendant so long had been, and still was, the lessee, is without excuse or justification. This conduct gave the principal the right, irrespective of any clause found in this contract, to declare it abrogated and canceled. The claim here made that plaintiff had a right to continue in possession of defendant's premises, property, and business for another thirty days and therefore with an uninterrupted and uncontrolled oppor-

tunity to make further breaches of good faith, finds no support in any authorities called to our attention. She herself forfeited her rights under this contract.

We cannot adopt the view of the court below in allowing plaintiff damages on the view that there was a so-called tortious eviction from the office and therefore an unlawful interference with or destruction of her agency or business. Room 111 was leased to defendant and it paid the rent. It was used for defendant's business, as to which plaintiff was the agent or servant, not the principal or master. As between the parties here there was no relationship of landlord and tenant requiring a resort to the unlawful detainer proceedings to obtain possession. Plaintiff's possession was but defendant's possession. She had no right of possession to the office as against defendant under such relationship and none was given her by the written contract. There is no support in law, and certainly not in equity, if claim were being made there, for the judgment in plaintiff's favor.

*By the Court.*—Judgment reversed, and cause remanded with directions to dismiss the complaint.